UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIMIE V.W.,[1]<br>      Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br>      Defendant. | Case No. 20-cv-03612-SK<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Regarding Docket Nos. 26, 30 |

This matter comes before the Court upon consideration of Plaintiff Jaimie V.W.'s motion for summary judgment and the cross-motion for summary judgment filed by Defendant, the Commissioner of Social Security (the "Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully considered the administrative record, the parties' papers, the relevant legal authority, and the record in the case, the Court hereby DENIES Plaintiff's motion and GRANTS the Commissioner's cross-motion for summary judgment for the reasons set forth below.

**BACKGROUND**

Plaintiff was born on August 20, 1975. (Administrative Record ("AR") 227.) On July 15, 2017, Plaintiff filed an application for supplemental social security income, alleging she was disabled starting on June 1, 2017. (*Id.*) On December 3, 2018, Plaintiff, accompanied by counsel, testified at a hearing before the Administrative Law Judge ("ALJ"). (AR 53-86.) Plaintiff and vocational expert Victoria Rei both testified at the hearing. (*Id.*)

The ALJ denied Plaintiff's claim for supplemental social security income. (AR 26.) At Step 1 of her analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

since the alleged onset date of June 1, 2017. (AR 19.) At Step 2, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder; post-traumatic stress disorder; opioid use disorder, on a methadone program; and cocaine abuse. (*Id.*) At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20.) At Step 4, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with non-exertional limitations to avoiding use of hazardous machinery or heights; to simple, routine, and repetitive work; to a low stress job with limited decision-making and changes to routine, no interaction with the general public, and occasional interaction with coworkers. (AR 22-23.) At Step 5, while the ALJ found that Plaintiff had no past relevant work, she concluded that Plaintiff could make adjustment to jobs that exist in significant numbers in the national economy. (AR 24-25.) The ALJ concluded that Plaintiff has not been under a disability since June 1, 2017. (AR 26.)

Plaintiff moves for summary judgment and argues that the ALJ erred in her decision denying benefits. (Dkt. 26.) Defendant cross-moves for summary judgment, arguing that the ALJ's decision and the Commissioner's final decision upholding it were correct. (Dkt. 30.)

The parties dispute the following grounds for error:

1. Whether the ALJ erred in evaluating the medical evidence, including the opinions of Kyle Van Gaasbeek, M.D., John Petzelt, Ph.D., R. Ferrell, M.D., J. Collado, M.D., K. Rudito, M.D., and I. Ocrant, M.D.;
2. Whether the ALJ erred in assessing Plaintiff's credibility;
3. Whether the ALJ erred in assessing Plaintiff's RFC;
4. Whether the ALJ erred in her Step 5 conclusions;
5. Whether the Appeals Council improperly rejected evidence submitted to the Appeals Council after the ALJ decision.

The Court discusses each of these bases for error seriatim below, before concluding that the ALJ did not err in assessing Plaintiff's application for supplemental social security income.

# ANALYSIS

**A.   Standard of Review.**

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the findings by the Administrative Law Judge ("ALJ"). *Reddick*, 157 F.3d at 720. The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Id.* at 720-21.

**B.   Legal Standard for Establishing a Prima Facie Case for Disability.**

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520. The plaintiff bears the burden of establishing a *prima facie* case for disability in the first four steps of evaluation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). However, the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The five-step analysis proceeds as follows. First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). To be considered severe, a medical impairment must significantly limit physical or mental ability to do basic work activities and must be of twelve months duration or be expected to last for at least twelve months. (*Id.*) Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix I to the regulation (a list of impairments presumed severe enough to preclude work), benefits are awarded without

3

1 consideration of the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d).
2 Fourth, if the claimant's impairments do not meet or equal a listed impairment, the ALJ will assess
3 and make a finding about the claimant's residual functional capacity ("RFC") based on all relevant
4 medical and other evidence in the claimant's case record. 20 C.F.R. § 416.920(e). The RFC
5 measurement describes the most an individual can do despite his or her limitations. *Id.* §
6 404.1545(a)(1). If the claimant has the RFC to perform past relevant work, benefits will be
7 denied. *See id.* § 404.1520(f). If the claimant cannot perform past relevant work, the ALJ will
8 proceed to step five. *Id.*

9 At step five, the ALJ determines whether the claimant can make an adjustment to other
10 work. 20 C.F.R. § 404.1520(f)(1). If the claimant can make the adjustment to other work, the
11 ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other
12 work, the ALJ will find that the claimant is disabled. *Id.* at 404.1520(e) and (g). There are two
13 ways to make this determination: (1) by the testimony of an impartial vocational expert or by
14 reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.2. *Id.*

**C.     Substantial Evidence in the Record Supports the ALJ's Decision.**

**1.     The ALJ correctly weighed the medical evidence of record.**

On January 18, 2017, the Social Security Administration issued revisions to its rules for evaluating medical evidence in Social Security Disability Cases. 82 Fed. Reg. 5844. The new rules became effective as of March 27, 2017. *Id.* Some of the new rules apply only to claims filed after March 17, 2017, and leave the old rules in effect for claims filed before that date. *Id.* Applying the revised rules, 20 C.F.R. § 404.1527 governs the evaluation of medical opinion evidence for claims filed before March 27, 2017. That section continues use of the prior rule for weighing the medical evidence to claims filed before March 27, 2017. 20 C.F.R. § 404.1527. For claims filed after March 27, 2017, the new rules apply. Plaintiff's claim was filed on July 15, 2017. (AR 227.) Therefore, the new rules for evaluating medical opinion evidence apply to Plaintiff's claim.

For benefits applications filed after March 27, 2017, such as Plaintiff's, the Social Security Administration's ("SSA") regulations and several Social Security Rulings regarding the evaluation

4

of medical evidence have been amended.  Prior to the current regulations, Ninth Circuit law held that an ALJ must provide clear and convincing reasons to reject a treating or examining physician's uncontradicted opinion and must provide specific and legitimate reasons to reject a treating or examining physician's contradicted opinion.  *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citations omitted).  However, under the current regulations, "the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'"  *V.W. v. Comm'r of Soc. Sec.*, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (citation omitted) (noting that the 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017).  Some district courts have continued to apply the "clear and convincing" and "specific and legitimate" standards as a "benchmark against which the Court evaluates [the ALJ's] reasoning."  *See, e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020).  Others, including courts in this district, have not.  *See, e.g.*, *V.W.*, 2020 WL 1505716, at *13; *Agans v. Saul*, 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021).

Plaintiff argues that the Court should apply the standards adopted by the Ninth Circuit, which provide weight to medical opinions depending in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals.  *See, e.g.*, *Ryan v. Commissioner of Social Security*, 528 F.3d 1194, 1198 (9th Cir. 2008).  However, regulatory agencies such as the SSA have broad authority to interpret the statutes that they are charged with applying, as long as their regulations are not arbitrary and capricious or contrary to the statute, and courts must defer to validly adopted regulatory interpretations.  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *see also Barnhart v. Walton*, 535 U.S. 212, 222 (2002) (granting deference under *Chevron* to SSA interpretation of duration requirement for disability benefits.)  Because agencies are experts in the field, an agency's contrary interpretation will supersede a prior judicial construction unless the "prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."  *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

The Ninth Circuit's determination of the treating physician rule and the corollary weight it attributed to treating, examining, or non-examining medical providers were not derived from the unambiguous terms of the statute. *See Agans*, 2021 WL 1388610, at *6 (describing the source and evolution of the treating physician rule). "The treating physician rule . . . was originally developed by Courts of Appeals as a means to control disability determinations by administrative law judges under the Social Security Act." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003). When the SSA later adopted regulations approving and formalizing use of the rule in the Social Security disability program, the agency noted that "[n]one of the circuit courts of appeals has held that its treating physician rule is required by the Act or Constitution." *See* Final Rules, Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 (1991). Therefore, the SSA's new regulations regarding the examination of and weight given to medical providers supersede the Ninth Circuit's treating physician rule. The Court will address the ALJ's evaluation of the medical opinions in accordance with the new regulations.

Under the current regulations, the Commissioner must evaluate the persuasiveness of all medical opinions based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(a), (c)(1)-(5). "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'" *V.W.*, 2020 WL 1505716 at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations provide that, with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)

6

or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

Explanation of the consideration of the other factors is optional, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.* While the new "regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Christopher Charles A. v. Comm'r of Soc. Sec.*, 2020 WL 916181, at *2 (W.D. Wash. Feb. 26, 2020) (citing 20 C.F.R. §§ 404.1520c(a) and (b) (1), 416.920c(a) and (b) (1)).

The ALJ correctly found that the opinions of Kyle Van Gaasbeek, M.D., R. Ferrell, M.D., John Petzelt, Ph.D., J. Collado, M.D., K. Rudito, M.D., and I. Ocrant, M.D. were persuasive because they were well supported and consistent with the administrative record.

### i. Rudito and Ocrant.

Rudito and Ocrant are state agency medical consultants who evaluated the medical evidence of record and concluded that Plaintiff had no severe medical impairments. (AR 20 (citing AR 91-94 and 119-122).) The ALJ found that these opinions are consistent with the medical record, which is composed of some records that are too remote from the application period to support a disability finding and some records that refer only to three months of treatment and show normal physical screenings. (AR 20 (citing AR 324-346, 347-372, 373-380, 388-428).) Plaintiff argues that the lack of relevant records is not sufficient to support Rudito's and Ocrant's findings of no severe physical impairments here. (Dkt. 26.) However, the ALJ did not solely rely on the absence of records but also referred explicitly to portions of the record that contain normal physical examinations from a recent period. (AR 20 (citing AR 388-428).) Accordingly, the ALJ did not err in finding these opinions persuasive because those opinions comport with the evidence in the administrative record. Additionally, even in the medical evidence outside the relevant time period, Plaintiff points to no records that demonstrate severe physical impairments. Rather, the records Plaintiff cites from outside the relevant time period refer primarily to Plaintiff's mental health, with some evidence of normal physical examinations conducted alongside mental health screenings. (AR 324-346, 347-372, 373-380, 388-428, 399 (normal physical examination), 402

(normal physical examination). The ALJ did not err in finding the opinions of Rudito and Ocrant that Plaintiff lacked severe physical impairments persuasive.

### ii. Van Gaasbeek.

Van Gaasbeek is a psychological consultative examiner who personally examined Plaintiff and concluded that she suffers from major depressive disorder, post-traumatic stress disorder, and opiate use disorder on a methadone program. (AR 383-387.) Van Gaasbeek found that Plaintiff had mild limitation in all domains, and moderate impairment in her ability to complete a normal day and workweek and in dealing with workplace stressors. (*Id.*) The ALJ found Van Gaasbeek's opinion persuasive because it was based on the most comprehensive psychological evaluation in the record and was consistent with other medical observations in the record, including those of Colin Buzza, M.D.[2], Ferrell, Petzelt, and Collado. (AR 21-22.) Plaintiff argues that the ALJ erred in finding the opinion of Van Gaasbeek persuasive because the ALJ relied on that opinion in conjunction with the fact that Plaintiff had not sought treatment in over a year. (Dkt. 26.) However, the ALJ extensively discussed the contents of Van Gaasbeek's evaluation and compared them to other opinions and evidence in the medical record. (AR 21-22.) In finding Van Gaasbeek's opinion persuasive, the ALJ reviewed other evidence of record and determined that the opinion is "based upon the most comprehensive psychological examination in the record" and consistent with other examinations of Plaintiff and of the evidence of record. (AR 21.)

Plaintiff argues that the paucity of records from Buzza should not have contributed to the ALJ's conclusion that Van Gaasbeek's opinion was supported by the lack of other treatment records. However, the ALJ did not rely on the lack of records from Buzza in finding Van Gaasbeek's opinion persuasive. (AR 21.) Later in her opinion, the ALJ cited the fact that Plaintiff has not sought treatment, but that observation was made during her assessment of Plaintiff's credibility, rather than during her assessment of the persuasiveness of Van Gaasbeek's opinion.

---

[2] Buzza treated Plaintiff in September and November of 2017. (AR 395, 414, 426.) Buzza's examination included the observation that Plaintiff showed normal physical condition, dysphoric mood, and diagnoses of post-traumatic stress disorder, major depressive disorder, opioid dependence, and cocaine abuse. (*Id.*) However, Buzza did not treat Plaintiff again after November 2017. The ALJ found this three-month treatment history by Buzza insufficient to support the durational requirement of severe medical impairment.

(AR 23.) The ALJ noted that the lack of treatment records from Buzza are consistent with the limitations found by state agency psychiatric consultants Ferrell, Petzelt, and Collado. (*Id.*) The ALJ did not err in her evaluation of Van Gaasbeek's opinion as persuasive.

### iii. Ferrell, Petzelt, and Collado.

Ferrell, Petzelt, and Collado are state agency psychiatric consultants who reviewed Plaintiff's treatment records and concluded that Plaintiff has severe mental impairments that limit her to simple repetitive tasks with minimal public contact. (AR 91-99, 104-113, 119-129). The ALJ found these opinions persuasive because they were supported by Van Gaasbeek's opinions and consistent with Plaintiff's minimal treatment records with Buzza. (AR 22.) Again, Plaintiff argues that the ALJ erred because her opinion noted Plaintiff's failure to seek treatment. (Dkt. 26.) However, Plaintiff has it backwards; the ALJ found that the *limitations* described by Ferrell, Petzelt, and Collado – including limited ability to interact with the public – are supported by the fact that Plaintiff had limited success in seeking ongoing treatment for her mental health. (AR 22.) Thus, the ALJ found that the opinions of Ferrell, Petzelt, and Collado were persuasive because they aligned with other evidence in the record and were well supported, including by Plaintiff's own demonstrated limitations in seeking treatment. (*Id.*) The ALJ did not err in finding Ferrell, Petzelt, and Collado to be persuasive.

### 2. The ALJ properly evaluated Plaintiff's credibility.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "The ALJ's findings, however, must be supported by specific, cogent reasons." *Id*. In evaluating the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 752 F.3d 586, 591 (9th Cir. 2009)). First, the ALJ must determine if there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely

1   because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th
2   Cir. 2010) (citation omitted).

3       Second, if there is no evidence of malingering, "the ALJ can reject the claimant's
4   testimony about the severity of her symptoms only by offering specific, clear and convincing
5   reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation omitted). "General findings are
6   insufficient; rather, the ALJ must identify what testimony is not credible and what evidence
7   undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (citation omitted). The ALJ is
8   permitted to consider a number of factors including: (1) inconsistencies in the record concerning
9   Plaintiff's symptoms; (2) any unexplained or inadequately explained failure to seek treatment or to
10  follow a prescribed course of treatment; (3) Plaintiff's daily activities; and (4) observations of
11  treating and examining physicians and other third parties. *See Smolen v. Chater*, 80 F.3d 1273,
12  1284 (9th Cir. 1996). If the ALJ supports his credibility determination with substantial evidence
13  in the record, the Court may not "to second-guess that decision." *Morgan v. Comm'r of the Soc.*
14  *Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotation marks and citation omitted).

15      Here, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for
16  rejecting Plaintiff's testimony regarding the severity of her symptoms. In particular, Plaintiff
17  disputes the ALJ's reliance on the following evidence from the record: Plaintiff's statement that
18  she used to love reading compared with her statement to Van Gaasbeek that she currently loves
19  browsing books; Plaintiff's testimony that her physical health is "okay;" Buzza's statement that
20  Plaintiff's mental status is "within normal limits;" and Dr. Morey's observation that Plaintiff may
21  have been less than forthright in an attempt to exaggerate her symptoms. (Dkt. 26.) In disputing
22  the ALJ's interpretation of each of these facts, Plaintiff argues for a different interpretation of the
23  evidence of record. (*Id.*) However, in making that argument, Plaintiff fails to establish that the
24  ALJ did not provide clear and convincing reasons to support the finding that Plaintiff's
25  impairments were less severe than she claimed. Plaintiff may not find these reasons convincing,
26  but the ALJ extensively examined the medical evidence of record and compared it to Plaintiff's
27  statements to conclude that Plaintiff's representation of the severity of her symptoms was not
28  supported. (AR 23-24.)

The ALJ gave clear and convincing reasons for finding that Plaintiff's impairments were less severe than Plaintiff claimed, including: the fact that Plaintiff had not sought any treatment in over a year; the fact that she takes no medication for her mental health; the fact that Plaintiff reports she is in "okay" physical health; the fact that Plaintiff's ability to conduct activities of daily living, such as grocery shopping or meeting extended family members, does not comport with her statements regarding the severity of her limitations; the fact that Plaintiff claims to have panic attacks but that no evidence of panic attacks is found in the record; the fact that she stated she used to love reading but told Van Gaasbeek she currently browses bookstores. (AR 23-24.) The ALJ noted that these facts are inconsistent with the level of severity of impairment Plaintiff reports. (AR 23.) In addition to these inconsistencies, the ALJ noted treatment records that show Plaintiff has a fair ability to concentrate, as well as cognition, intelligence, insight, and judgment within normal limits. (AR 24 (citing AR 385, 414).) Thus, the ALJ cited and compared ample evidence from the record with Plaintiff's statements regarding severity, and the ALJ found clear and convincing reasons for concluding that Plaintiff's symptoms are not as severe as she represents them to be. The ALJ did not err in evaluating Plaintiff's credibility.

Plaintiff further argues that the ALJ, in assessing Plaintiff's credibility regarding the severity of her symptoms, improperly relied on the opinion of Leslie Morey, Ph.D., who stated that Plaintiff may not have been answering forthrightly and may have been attempting to portray herself in a pathological manner during a psychological examination. (Dkt. 26.) However, the ALJ did not consider Morey's findings regarding Plaintiff's self-presentation in the portion of her opinion that assessed credibility. Rather, the ALJ discussed Morey's findings at Step 3 of her analysis, in considering whether Plaintiff was severely impaired. (AR 20.) The ALJ observed that Plaintiff's "treatment records are inconsistent with severe mental impairment, but I have resolved all discrepancies in the light most favorable to the claimant by finding she has severe mental impairments that would limit her to simple work in a low-stress work environment […]" (*Id.*) In contrast, in her credibility analysis, the ALJ noted a statement from Morey's opinion that *supports* Plaintiff's assessment of her own limitations: "The medical evidence of record provides no clear nexus between [Plaintiff's desire not to have others depend on her] and [Plaintiff's] severe

11

1    impairments during the relevant period, although I note Dr. Morey opined claimant's 'drug use
2    has probably led to severe impairment in her ability to maintain social role expectations.'" (AR
3    23-24 (citing AR 333).)  Thus, the ALJ did not rely on Morey's opinion regarding malingering in
4    forming her decision as to Plaintiff's credibility.  Instead, the ALJ looked at Morey's findings in
5    considering the severity of Plaintiff's impairment but ultimately gave Plaintiff the benefit of the
6    doubt and concluded that Plaintiff was severely impaired.  There is no basis for error here.

7    Finally, Plaintiff argues that the ALJ should not have relied on Plaintiff's failure to seek
8    treatment as a basis for undermining the severity of Plaintiff's symptoms.  The ALJ noted that,
9    before her application for disability, Plaintiff had not sought treatment for her mental health since
10   November 2017.  (AR 23.)  However, Plaintiff did not provide any testimony that she attempted to
11   access mental health care during this time but was prevented from doing so due to her mental
12   health impairments.  The failure to seek formal mental health treatment is hardly probative of
13   whether a claimant suffers from a mental impairment.  *Nguyen v. Chater*, 100 F.3d 1462, 1465
14   (9th Cir. 1996).  The Ninth Circuit cautions that "it is questionable practice to chastise one with a
15   mental impairment for the exercise of poor judgment in seeking rehabilitation."  *Id.*  (quoting
16   *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989)).  However, where the record does not
17   indicate that a lack of treatment is due to resistance to treatment stemming from a plaintiff's
18   mental health issues, it is "reasonable for the ALJ to conclude that the level or frequency of
19   treatment [was] inconsistent with the level of complaints."  *Meyers v. Berryhill*, 733 Fed. Appx.
20   914, 915-916 (9th Cir. 2018) (citing *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)
21   (quotation marks omitted)).  Here, Plaintiff has not demonstrated that her lack of treatment for
22   mental health issues during the relevant time period was due to her mental health.  The ALJ
23   therefore did not err in finding that Plaintiff's failure to seek treatment had some bearing on her
24   credibility regarding the severity of her symptoms.

25   **3.    The ALJ correctly assessed Plaintiff's RFC.**

26   The ALJ's finding on RFC is supported by substantial evidence.  The RFC measurement
27   describes the most an individual can do despite his or her limitations.  *Id.* § 404.1545(a)(1).  The
28   RFC determination is solely within the province of the ALJ.  *Vertigan v. Halter*, 260 F.3d 1044,

1049 (9th Cir. 2001). The RFC finding must be supported by substantial evidence. *Id.* Here, Plaintiff argues that the ALJ incorrectly disregarded the opinions of Buzza, Kevin Lagor NP, and Jennifer Spevak LSCW in drawing her conclusion regarding RFC. (Dkt. 26.) However, the new regulations provide that an ALJ in considering RFC need only consider "medical opinions" setting forth diagnoses or prognoses, rather than merely medical sources providing judgments about diagnoses or prognoses. 20 C.F.R. § 416.913(a)(2). That section defines "medical opinion" as a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions or restrictions in the abilities listed in paragraphs (a)(2)(i)(A) through (D) and (a)(2)(ii)(A) through (F) of this section." *Id*. Plaintiff cites to statements by Buzza (AR 396), Langor (AR 402), and Spevak (AR 409) that do not meet this definition of a medical opinion. All three merely provide diagnoses but no information about what Plaintiff can do or what limitations she has in the categories listed under the regulation. (AR 396, 402, 409.) Accordingly, the ALJ was not required to consider them in assessing RFC. The ALJ supported her RFC finding by reference to medical records finding no severe impairments, the assessment of Van Gaasbeek, Plaintiff's own testimony, and the absence of further records indicating a more severe impairment. (AR 24.) This constitutes substantial evidence.

**4. The ALJ did not err at Step 5.**

Plaintiff argues that, had the ALJ correctly evaluated Plaintiff's RFC, she would have determined that Plaintiff was unable to perform other work at Step 5. (Dkt. 26.) However, as set forth above, the ALJ did not err in evaluating Plaintiff's RFC. Concomitantly, Plaintiff's argument for error at Step 5 fails as well.

**5. The evidence Plaintiff submitted to the Appeals Council does not alter the Commissioner's final decision.**

Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review. (AR 1-3.) Plaintiff submitted new evidence to the Appeals Council in support of her appeal. (AR 31-50.) The new evidence consists of the psychological evaluation of Katherine Wiebe, Ph.D. (*Id.*) "[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers

that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

The new evidence submitted by Plaintiff in the form of Weibe's psychological evaluation does not alter the fact that substantial evidence in the record supports the ALJ's finding that Plaintiff is not disabled. Weibe's opinion matches the finding of the ALJ that Plaintiff, while suffering from some impairments and requiring certain work limitations, is not disabled. Weibe assessed Plaintiff on March 20, 2019. (AR 31-50.) Plaintiff was an hour early for her appointment, and Weibe found that Plaintiff was cooperative, responsive, and showed good eye contact, though her affect was depressed. (AR 36.) Weibe estimated Plaintiff's IQ in the average range and found that Plaintiff had normal attention, concentration, executive functioning language ability, visual and spatial ability, and minor impairments in memory and sensory and motor abilities. (AR 38.) Weibe concluded that Plaintiff would be moderately limited in performing in a work setting but only mildly impaired in a work setting requiring unskilled work. (AR 50.) Weibe's findings are consistent with the ALJ's findings. In particular, the ALJ limited Plaintiff to simple, repetitive, routine work in a low stress job requiring only occasional decision-making, changes, and interaction with coworkers, and no public contact. (AR 22-23.) Weibe's findings also support the ALJ's conclusions about the general severity of Plaintiff's symptoms. Thus, the new evidence submitted by Plaintiff would not change the ALJ's findings, and remand is not required on that basis. *See Cramer v. Berryhill*, 706 Fed. Appx. 385, 386 (9th Cir. 2017.) The validity of the Commissioner's final decision is unchanged by Plaintiff's new evidence.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

For the foregoing reasons, the Court DENIES Jaimie V.W.'s motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED**.

Dated: March 1, 2022



SALLIE KIM
United States Magistrate Judge